# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NANCY PIETRAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06 C 3576 |
| vs. | ) | |
| | ) | |
| SENTRY INSURANCE COMPANY and CURFIN OLDSMOBILE, INC., d/b/a Curry Motors Driver's Edge, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | |
| PAUL BLAIR and LINDA KILLINGSWORTH, | ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 06 C 4769 |
| | ) | |
| vs. | ) | |
| | ) | |
| SENTRY INSURANCE COMPANY and RIDGEWAY CHEVROLET, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This decision involves two consolidated cases that present the same issue: whether a liability insurer is required to pay a settlement that its insured entered into in a lawsuit in which the insurer had declined to defend the insured. The Court rules in each case that the insurer must pay the settlement.

## Background

**1.** **The *Pietras* case**

The first of the two consolidated cases is entitled *Pietras v. Sentry Ins. Co.,* Case No. 06

C 3576. In an earlier suit, Nancy Pietras sued Curfin Oldsmobile, Inc., alleging that Curfin violated the Fair Credit Reporting Act by accessing her credit information and that of other class members without a permissible purpose. 15 U.S.C. §§ 1681b(a)(3)(A) & 1681b(c)(1)(B). The penalty for such FCRA violations is the greater of either "actual damages . . . or damages of not less than $100 and not more than $1,000." *Id.* § 1681n(a)(1)(A). Sentry Insurance Company refused to defend Curfin against Pietras' suit, though Curfin's insurance policy with Sentry covered Curfin for liability incurred due to "personal and advertising injury caused by an offense arising out of your business." Def. LR 56.1 Stat. ¶ 21 (internal quotation marks omitted). Curfin settled the case on a class-wide basis for $420,000, paying $20,000 and assigning the plaintiff class its rights under the insurance policy to the remaining $400,000.

In the present case, Pietras has stepped into Curfin's shoes and sued Sentry, alleging there was coverage under the insurance policy and that Sentry was obliged to indemnify Curfin. The Court previously ruled that Sentry is obliged to indemnify Curfin. *See Pietras v. Sentry Ins. Co.,* No. 06 C 3576, 2007 WL 715759 (N.D. Ill. Mar. 6, 2007). Pietras has moved for summary judgment against Sentry, seeking a determination that the settlement between Curfin and class members was reasonable and that judgment should be entered against Sentry in the amount of $400,000 plus prejudgment interest at 5% from May 31, 2006 and attorney's fees.

**2.     The *Blair* case**

The second of the two consolidated cases is entitled *Blair v. Sentry Ins. Co.,* Case No. 06 C 4769. In an earlier suit, Paul Blair and Linda Killingsworth sued Ridgeway Chevrolet, Inc., alleging the same type of FCRA violation claimed by Pietras in her suit against Curfin. Blair and Killingsworth were and are represented by the same lawyers who represented and still represent Pietras. Ridgeway had a liability insurance policy with Sentry that is

2

indistinguishable from Curfin's insurance policy. Ridgeway settled the case on a class-wide basis for $400,000 pursuant to an agreement under which it assigned the plaintiff class its rights under the insurance policy to recover that amount and incurred liability on its own of up to $20,000 for costs of notice and class administration.

In the present case, Blair and Killingsworth have stepped into Ridgeway's shoes and sued Sentry, alleging there was coverage under the insurance policy and that Sentry is obliged to indemnify Ridgeway. The Court previously ruled that Sentry is obliged to indemnify Ridgeway. *See Blair v. Sentry Ins. Co.,* No. 06 C 4769, Order of Apr. 16, 2007. Blair and Killingsworth have moved for summary judgment against Sentry, seeking a determination that the class settlement was reasonable and that judgment should be entered against Sentry in the amount of $400,000 plus prejudgment interest at 5% from November 15, 2006 and attorney's fees.

**Facts**

As the Court will discuss, in a situation like those presented in these cases, a settlement is binding on the insurer if it is reasonable in that it conformed to the standard of what a prudent uninsured party would have done under similar circumstances. For this reason, the relevant facts include not only the procedural histories recited above, but also class-wide FCRA settlements reached in comparable cases.

The Pietras case settled for $32 per class member; the Blair case settled for $20 per class member. As for comparable cases, the parties have focused their attention on a set of similar FCRA cases in this District in which the defendants paid settlements out of pocket. The parties have cited eighteen cases, which settled for an average of $34.59 per class member. As Sentry points out, however, the two largest settlements on a *per capita* basis were cases that settled

after the plaintiffs had prevailed on summary judgment. *See Kudlicki v. Farragut Fin. Corp.*, No. 05 C 2459 (N.D. Ill.); *Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668 (N.D. Ill.). Those cases arguably are not comparable to the present cases, in which liability had not been determined at the time of the settlements. After eliminating those cases, the average payment for comparable FCRA settlements by uninsured defendants was $28.26 per class member.

Eleven of the comparable cases involved lower *per capita* settlement amounts than Curfin agreed to in the *Pietras* case; only two of the comparable cases settled for a lower *per capita* amount than Ridgeway agreed to in the *Blair* case. This means that in five of the sixteen comparable cases, the *per capita* settlement amount was as large as or larger than Curfin's settlement, and in fourteen of the comparable cases, the amount was larger than Ridgeway's settlement.

## Discussion

Entry of summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Under Illinois law, the general rule is that when an insurer breaches its duty to defend, as Sentry did in these cases, the insured may enter into a reasonable settlement agreement without foregoing its right to seek indemnification. *See Guillen v. Potomac Ins. Co.,* 203 Ill. 2d 141, 158, 785 N.E.2d 1, 11-12 (2003) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 154 Ill. 2d 90, 128, 607 N.E.3d 1204, 1222 (1992)). But because the settlements in these cases provided that they were to be paid largely by Sentry, each plaintiff must "prove that the

4

settlement it reached with the insured was reasonable" before the settlement is considered binding on Sentry and thus payable by the insurer. *Id.* at 163, 785 N.E.2d at 14. This rule is meant to prevent an insured defendant from entering into a collusive settlement in which it overpays the plaintiff, knowing that it is in effect using the insurer's checkbook.

Under *Guillen,* the "litmus test" for determining whether the insured's decision to settle is reasonable is "whether, considering the totality of the circumstances, the insured's decision conformed to the standard of a prudent *uninsured*." *Id*. at 163, 785 N.E.2d at 14 (emphasis in original; internal quotation omitted).

In opposing the plaintiffs' motions for summary judgment, Sentry argues that because they were settling with the insurer's money, Curfin and Ridgeway had no incentive to bargain over the settlement amount. That, however, is the driving force that led the Illinois Supreme Court to adopt its litmus test in *Guillen*; it is not a basis to disregard *Guillen* and reject the settlement without assessing its overall reasonableness.

Sentry argues that because Curfin and Ridgeway did not oppose class certification and did not attempt to litigate the merits of the FCRA cases, their quickly-reached settlements were unreasonable. But as plaintiffs points out, classes have been certified in virtually every other comparable FCRA case. The fairly self-evident reason for this is that class actions are ideal in cases like the underlying suits here, "in which the potential recovery is too slight to support individual suits, but injury is substantial in aggregate." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953 (7th Cir. 2006). No reasonable fact finder could infer that a prudent uninsured party would have opposed class certification in either case.

Regarding the merits of the cases, Sentry points out that the insured parties had no incentive to contest liability or damages because of the availability of insurance. It contends

5

that the relatively small proportion of the settlement that the insureds paid and the lack of litigation of the merits raise a question as to whether "a reasonably prudent person in the position of the [insured] would have settled" for the same amount. *Guillen*, 203 Ill. 2d at 163, 785 N.E.2d at 14. In "considering the totality of the circumstances," however, the Court must take into account, for instance, the fact that the insured was denied coverage by Sentry in the underlying suits. *Id.* That decision gave Curfin and Ridgeway an incentive to settle quickly rather than face significant attorney's fees and other out of pocket expenses to defend the case, as well as the expenditure of employee time – not to mention the possibility of a larger judgment. The fact that Curfin and Ridgeway might have been able to dispute the plaintiffs' claims that they acted willfully does not mean it was imprudent for them to settle, given the prospect of lengthy, expensive, and time-consuming litigation that they would have had to finance out of pocket.

Sentry argues that there was no "serious negotiation on damages" and that this can be an indicator of unreasonableness. Def. Resp. at 4 (citing *Continental Cas. Co. v. Westerfield*, 961 F. Supp. 1502, 1505 (D.N.M. 1997)). The absence of serious negotiation can be an indicator of unreasonableness, which is why the court in *Continental* said that such settlements warrant "heightened scrutiny." *Id*. That does not mean, however, that a quickly negotiated settlement is necessarily unreasonable. *Id.* The Court therefore turns to the question of whether Pietras and Blair have met their burden to demonstrate that the settlements pass *Guillen*'s litmus test.

In addressing the settlements' reasonableness under the *Guillen* test, both sides refer to comparable cases in which uninsured defendants settled for cash. Under Curfin's settlement agreement with Pietras, each class member will receive $32, a 68% discount from the $100 per person minimum available for a willful violation of the FCRA. According to Sentry, this

6

compares poorly, from the perspective of its insured Curfin, with discounts automobile dealers obtained in comparable FCRA settlements. The evidence, however, does not support Sentry's contention that Curfin got a bad deal; rather, it shows the opposite. Even after excluding two comparable cases which settled for the lowest discounts after plaintiffs had prevailed on summary judgment, the other sixteen cited cases settled for an average discount of 71.74%. In other words, the class members received, on average, $28.26, which is not materially different from the *per capita* award in the Pietras – Curfin settlement.[1]

Sentry argues that the comparable cases undermine Pietras' contention that the settlement was reasonable, because eleven of the eighteen cases settled for discounts greater than 68%. Rather than paying $32 per class member, Sentry says, "a prudent uninsured defendant . . . would settle for $11.68 per class member" because "$11.68 was fair and reasonable in *Smith v. Rockenbach*" (Case No. 05 C 5454). Def. Resp. at 7. *Smith*, however, settled for the greatest discount of any case among those cited as comparable. Sentry is, in effect, arguing that a reasonable uninsured defendant would not agree to a settlement any higher than the lowest reached in all comparable cases. The Court disagrees. *Guillen* does not entitle Sentry to the most favorable settlement possible. That case imposes a reasonableness requirement, not a "most favored nations" requirement.

In sum, Sentry's argument that a 68% discount is unreasonable when compared with the sixteen-case average 71.74% discount is lacking in merit. The settlements reached by uninsured parties in comparable cases are more than sufficient to demonstrate that the Curfin's settlement with Pietras was reasonable and satisfies the *Guillen* standard. No reasonable fact

---

[1] In cases where there was a discount range, e.g. 86.4%-66%, but no distribution information, the Court averaged the high end and low end for a single figure.

finder could conclude otherwise. Pietras is therefore entitled to summary judgment.

The same is true in the *Blair* case. As noted earlier, Ridgeway settled with the plaintiff class for a *per capita* payment of $20 per class member. If the Pietras – Curfin settlement was reasonable, as the Court has concluded, the Blair – Ridgeway settlement was likewise reasonable.

**Conclusion**

For the reasons stated above, the Court grants the plaintiffs' motions for summary judgment in Case No. 06 C 3576 and Case No. 06 C 4769. In Case No. 06 C 3576, the Clerk is directed to enter judgment in favor of the plaintiff in the amount of $425,644, which consists of the principal amount of the Pietras – Curfin settlement plus prejudgment interest at five percent per annum through from May 31, 2006 through September 11, 2007. In Case No. 06 C 4769, the Clerk is directed to enter judgment in favor of the plaintiff in the amount of $416,667, which consists of the principal amount of the Blair – Ridgeway settlement plus prejudgment interest at five percent per annum through from November 15, 2006 through September 11, 2007. The plaintiffs' motions for attorney's fees will be determined pursuant to the provisions of Local Rule 54.3, except that the fee motions will be due on October 29, 2007, not the longer period provided by the Rule. The parties are directed to agree upon appropriate dates for the pre-motion disclosures contemplated by Rule 54.3. Both cases are set for a status hearing on October 31, 2007 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
Date: September 10, 2007                                   United States District Judge